James P. O'CONNOR, Plaintiff,

v.

MIDWEST PIPE FABRICATORS, INC.,
Defendant, Counter-Claimant, & Third
Party Plaintiff,

v.

Elizabeth L. O'CONNOR and Pipex,
Inc., Third-Party Defendants.

Civ. A. No. 85–2301.

United States District Court,
D. Kansas.

May 6, 1987.

Thomas R. Buchanan, Michael L. Koon, Overland Park, Kan., Peter E. Strand, Michael L. Koon, Patrick McLarney, Shook, Hardy & Bacon, Kansas City, Mo., for Elizabeth O'Connor and Pipex, Inc.

James Warden, Michaela M. Nicolarsen, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, Kan., Thomas H. Dahlk, Fitzgerald & Brown, Omaha, Neb., for Midwest Pipe Fabricators, Inc.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on plaintiff and third-party defendants' ("the O'Connors") motion to dismiss and motion to strike defendant/third-party plaintiff's (Midwest Pipe) memorandum in opposition to the motion to dismiss. On February 2, 1987, Midwest Pipe filed an amended complaint in which it stated a cause of action against the O'Connors for violation of the civil Racketeer Influenced & Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. The O'Connors filed a motion to dismiss for failure to allege a pattern of racketeering activity as defined in the statute. Midwest Pipe filed a voluminous

memorandum in opposition to the motion to dismiss, which the O'Connors seek to strike because the memorandum is nonresponsive to the motion to dismiss and because it relies on factual allegations that are irrelevant in adjudicating a motion to dismiss.

■ The first matter is the O'Connors' motion to strike the memorandum in opposition to the motion to dismiss. As grounds for the motion, the O'Connors argue that (1) the memorandum seeks to inject extraneous matters that are neither relevant nor proper in a Rule 12(b)(6) motion; (2) the memorandum is designed to foreclose the O'Connors' intended motion for summary judgment to be filed later in the case; and (3) the memorandum is nonresponsive to the motion to dismiss and is intended to introduce prejudice in the case. Midwest Pipe argues that matters outside the pleadings are properly considered by the court in a motion to dismiss and that it was merely trying to meet its burden to support its RICO claim.

The court generally agrees with the O'Connors on the appropriate scope of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Moreover, the court would much prefer concise briefs addressing only the legal sufficiency of the RICO claim under the developing law. Midwest Pipe's brief does raise some irrelevant or tangential factual matters. The court understands, however, that a party faced with a motion to dismiss might be zealous in an attempt to sustain the validity of its pleadings. Furthermore, while in the present case the objectionable memorandum has perhaps overstated its arguments, the court would not restrict a response to a motion to dismiss as tightly as the O'Connors would like. While factual matters beyond the four corners of the pleadings will not affect the court's determination of the legal sufficiency of the cause of action, they may provide the court with insight on the appropriate remedy for a pleading that fails to state a claim. The proper remedy is not always dismissal. When it appears to the court that the attempted cause of action can be stated but that an inarticulate pleading has rendered

it subject to dismissal for failure to state a claim, the court may grant leave to file an amended complaint. *See Ray v. Karris,* 780 F.2d 636, 645 (7th Cir.1985); *Schacht v. Brown,* 711 F.2d 1343, 1351–52 (7th Cir.), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983). The court is mindful of the concerns expressed in the O'Connors' motion relating to the "tactical objectives" of Midwest Pipe. But the court is also capable of sifting out the chaff in litigants' legal briefs and concentrating solely on the relevant legal and factual matters. The court is neither interested in nor impressed with lengthy, ex parte factual summaries except as they provide support for properly filed motions. The allegations in this brief or that memorandum command the attention of the court only for adjudication of these motions and do not leave an indelible impression so as to prejudice one party or another in the court's eyes. The O'Connors can rest assured that the court will consider only the materials in Midwest Pipe's memorandum that properly support its opposition to the motion to dismiss, and the memorandum will not leave the court jaundiced in any future legal matters to be addressed in this case.

For the reasons stated above, the court shall deny the O'Connors' motion to strike.

■ The real crux of this Memorandum and Order is directed to the O'Connors' motion to dismiss Count IV of Midwest Pipe's amended complaint. The movants allege that Count IV, which attempts to state a RICO claim, fails to sufficiently allege a pattern of racketeering activity. As the movants' memorandum notes, this is the element of a civil RICO cause of action that is receiving the most attention in the courts today. The explosion of litigation concerning the pattern requirement began with the following statement by the United States Supreme Court:

As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (empha-

sis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern....

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). The Supreme Court further quoted Congressional history indicating that a "pattern" requires continuity plus relationship, and the threat of continuing activity. *Id.* (citation omitted). Many United States Courts of Appeals and District Courts have undertaken to interpret and apply the *Sedima* footnote, including this court and the Tenth Circuit. The movants accurately cite cases from this court that require an allegation of more than one fraudulent scheme in order to meet the pattern requirement. *See Agristor Leasing v. Meuli*, 634 F.Supp. 1208, 1225–26 (D.Kan.1986). In spite of the prior opinions, however, the court must disagree with the movants' contention that "the controlling and well established law of this circuit is that to state a valid RICO claim, the predicate acts alleged must be part of different fraudulent or criminal schemes."

Despite this court's previous pronouncements on the issue, an analysis of the meaning of "pattern" that rigidly focuses on the number of schemes alleged is misguided and much too narrow. The recent Tenth Circuit opinion in *Torwest DBC v. Dick*, 810 F.2d 925 (10th Cir.1987) makes this point clear. The *Torwest DBC* court stated that to establish a pattern there must be (1) a relationship among the alleged wrongful acts (*i.e.*, acts that are part of a common fraudulent scheme), and (2) continuity of the acts (*i.e.*, the threat of continuing activity). RICO does not apply to sporadic activity or to the isolated offender. The Tenth Circuit appeared to agree that the plaintiff must demonstrate some facts from which at least the threat of ongoing illegal conduct can be inferred. The court stated, "A scheme to achieve a single discrete objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is accomplished." *Id.* at 928–29. The court also appeared to approve of those courts that allow a RICO claim to proceed even though the claim is based on one scheme involving one victim, when the plan contemplates open-ended fraudulent activity and does not have a single goal that, when achieved, will bring the activity to an end. *Id.* at 929. Although the court realized that its approach "may not provide precise guidelines, ... it is required by [the] mandate to construe RICO broadly while at the same time complying with the *Sedima* concept of the elements of a pattern." *Id.* Therefore, the proper focus is not the number of schemes alleged, but rather on the overall context of the wrongdoing and whether it is continuing rather than isolated and completed.

Turning to Count IV of Midwest Pipe's amended complaint, the complainant incorporated a section specifically titled "Pattern of Racketeering Activity." Midwest Pipe alleged "numerous acts of commercial bribery in violation of K.S.A. § 21–4405, a class E felony." The complainant listed the alleged bribes, including the date, the amount paid, and to whom they were paid. The complainant also alleged a violation of K.S.A. 21–4401, the Kansas racketeering statute, and again listed specific acts. Finally, Midwest Pipe alleged violation of 18 U.S.C. §§ 1341, 1343, the wire and mail fraud statutes. The schemes identified by complainant were (1) Defrauding Matney & Co. out of commissions; and (2) Conspiracy to defraud Midwest Pipe of sales of certain products. Unless the court is misreading the amended complaint and Matney & Co. is the same entity as Midwest Pipe Fabricators, Inc., the O'Connors are simply wrong in stating that there was a single victim and a single scheme alleged by Midwest Pipe. Furthermore, in Count IV Midwest Pipe certainly alleges the type of relationship among claims and potential continuity discussed in *Torwest DBC*. Even if, as the O'Connors' memorandum assumes for purposes of the motion, there was a single

scheme that involved an effort by the O'Connors to obtain an improper competitive advantage over Midwest Pipe, this sort of scheme strongly implies continued activity to maintain any advantage attained. Moreover, all of the acts alleged are closely related to the alleged fraudulent schemes. They all concern efforts to fraudulently obtain a market advantage over, and willfully cause economic damage to Midwest Pipe and Matney & Co., among other companies. The court finds that Count IV adequately alleges a pattern of racketeering activity.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff and third-party defendants' motion to strike be denied. IT IS FURTHER ORDERED that plaintiff and third-party defendants' motion to dismiss Count IV of defendant/third-party plaintiff's amended complaint be denied.